IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: HOMEBANC MORTGAGE CORP., et al.<br><br>Debtors. | Bankruptcy Case No. 07-11079-KJC<br>Adv. No. 07-51740-KJC<br>BAP No. 17-24 |
| GEORGE L. MILLER, CHAPTER 7 TRUSTEE FOR THE ESTATE OF HOMEBANC CORP.,<br><br>Appellant,<br><br>v.<br><br>BEAR STEARNS & CO., INC., BEAR STEARNS INTERNATIONAL LIMITED, AND STRATEGIC MORTGAGE OPPORTUNITIES REIT, INC.<br><br>Appellees. | Civil Action Nos. 17-797-RGA |

MEMORANDUM OPINION

John T. Carroll, Barry M. Klayman, COZEN O'CONNOR, Wilmington, DE; Steven M. Coren (argued), David M. DeVito, KAUFMAN, COREN & RESS, P.C., Philadelphia, PA.

 Attorneys for Appellant.

William P. Bowden, Karen B. Skomorucha Owens, ASHBY & GEDDES, P.A., Wilmington, DE; Andrew W. Stern (argued), James O. Heyworth, Francesca E. Brody, SIDLEY AUSTIN LLP, New York, NY.

 Attorneys for Appellees.

August 14, 2018

*/s/ Richard G. Andrews*
**ANDREWS, U.S. DISTRICT JUDGE:**

This is an appeal from the Bankruptcy Court's June 14, 2017 final judgment. (D.I. 30-2 at A512). The appeal is fully briefed. (D.I. 29; D.I. 31; D.I. 34). I held oral argument on June 22, 2018. (D.I. 40 ("Tr.")). After oral argument, I ordered the parties to produce letter briefs. (D.I. 38; D.I. 39). For the reasons set forth below, the Bankruptcy Court's judgment is **AFFIRMED**.

## I. BACKGROUND

The parties' dispute arises in connection with an auction of securities owned by HomeBanc Corporation ("HomeBanc"), which was conducted by Appellees Bear, Stearns & Co., Inc., Bear Stearns International Limited, and Strategic Mortgage Opportunities REIT, Inc. (collectively, "Bear"). Between October 2005 and August 2007, Bear lent money to HomeBanc in a number of repo transactions made pursuant to a Global Master Repurchase Agreement ("GMRA").[1] Each individual transaction made pursuant to the GMRA was accompanied by a confirmation which identified the purchase date, the purchase price, the repurchase date, and the pricing rate. Between 2005 and 2007, HomeBanc obtained approximately $200 million from Bear through numerous repo transactions.

This litigation involves nine Securities at Issue ("SAI"), which Bear obtained in three sets of transactions that took place in June 2006, June 2007, and July 2007. Each of the SAI was transferred to Bear along with other securities, and the confirmation corresponding to each of the SAI showed a purchase price of zero and open repurchase dates. HomeBanc's repos became due on August 7, 2007, at which point Bear offered to extend the repos if HomeBanc reduced its

---

[1] A repurchase agreement, or repo, is a transaction whereby one party transfers a security to another in exchange for funds along with a simultaneous agreement by the transferee to give back the security upon repayment of the funds.

2

outstanding debt by making a payment of approximately $27 million. HomeBanc did not make the payment. On August 9, 2007, Bear issued formal notices of default. That night, HomeBanc filed chapter 11 bankruptcy petitions. The bankruptcy was later converted to a chapter 7 proceeding.

On the morning of August 10, 2007, Bear distributed auction solicitations, also known as bid lists, for the securities on repo under the GMRA, including the nine SAI. The bid lists were sent to approximately 200 investors, with bids due on August 14, 2007. In addition to soliciting outside bids, the Bear repo finance desk solicited bids from the Bear mortgage trading desk. To ensure that Bear affiliates were not at an advantage, any bids from an affiliate were required to be submitted 30 minutes prior to the close of the auction. The repo finance desk received only two bids, an all or nothing bid of $60.5 million from the Bear mortgage trading desk, and a bid of $2.19 million by Tricadia Capital for two individual securities, neither of which is among the nine SAI. The securities were sold to the Bear mortgage trading desk.

The Bankruptcy Court granted summary judgment in Bear's favor, holding that the SAI were subject to "repurchase agreements" under the Bankruptcy Code. *In re HomeBanc Mortg. Corp.*, 2013 WL 211180 (Bankr. D. Del. Jan. 18, 2013) (D.I. 30-1 at A313-64). More specifically, the Bankruptcy Court found that the repo transactions qualified as "repurchase agreements" under 11 U.S.C. § 101(47)(A)(i), having been transferred "against the transfer of funds." (*Id.* at A333). The Bankruptcy Court alternatively held that even if the transactions did not qualify under § 101(47)(A)(i), they qualified under § 101(47)(A)(v), the catchall provision. (*Id.* at A334). Having established that the transactions were "repurchase agreements" under the Bankruptcy Code, the Bankruptcy Court found that Bear's exercise of its contractual right to sell

the SAI was entitled to the safe harbor protection of § 559 of the Bankruptcy Code.[2] (*Id.* at A316). The Bankruptcy Court then considered whether Bear's auction of the SAI complied with the terms of GMRA. (*Id.* at A358). Because the GMRA gave discretion to the non-defaulting party, the Bankruptcy Court concluded that the only real question was whether the timing and manner of the auction was in good faith, given the prevailing market conditions. (*Id.*). The Bankruptcy Court held that there existed no disputed fact as to whether the auction was in good faith and in accordance with industry practice, and granted summary judgment for Bear. (*Id.*).

On appeal, I affirmed in part and reversed in part. *In re HomeBanc Mortg. Corp.*, 2014 WL 1268677 (D. Del. Mar. 27, 2014) (D.I. 30-1 at A365-77). In relevant part, I held that the SAI were not transferred "against the transfer of funds," and therefore did not meet the definition of "repurchase agreements" in § 101(47)(A)(i). (D.I. 30-1 at A372). Rather, I held that the SAI were "credit enhancements," which qualified as "repurchase agreements" under § 101(47)(A)(v), the catchall provision. (*Id.* at A373). I remanded the case for the Bankruptcy Court to determine "whether the auction complied with the GMRA." (*Id.* at A376). In doing so, I affirmed that the GMRA gave Bear "a certain amount of discretion in what to do with the disputed securities once HomeBanc had declared bankruptcy," cabined by good faith and rationality. (*Id.* at A373-75).

On remand, after a six-day trial, the Bankruptcy Court found that Bear's "auction of [HomeBanc] repurchase agreement collateral in August 2007 was rational, in good faith and in compliance with the [GMRA]." (*Id.* at A376; D.I. 30-2 at A471).

The Chapter 7 trustee of HomeBanc, George L. Miller (the "Trustee"), appealed the Bankruptcy Court's decision on June 21, 2017. (D.I. 1).

---

[2] Section 559 prevents a court from staying, avoiding, or otherwise limiting the exercise of the contractual rights of a repo participant. *See* 11 U.S.C. § 559.

4

## II. LEGAL STANDARD

The Court has jurisdiction to hear an appeal from a final judgment of the Bankruptcy Court pursuant to 28 U.S.C. § 158(a)(1). In undertaking a review of the issues on appeal, the Court applies a clearly erroneous standard to the Bankruptcy Court's findings of fact and a plenary standard to its legal conclusions. *See Am. Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76, 80 (3d Cir. 1999). With mixed questions of law and fact, the Court must accept the Bankruptcy Court's finding of "historical or narrative facts unless clearly erroneous, but exercise[s] 'plenary review of the trial court's choice and interpretation of legal precepts and its application of those precepts to the historical facts.'" *Mellon Bank, N.A. v. Metro Commc'ns, Inc.*, 945 F.2d 635, 642 (3d Cir. 1991) (citing *Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 101–02 (3d Cir. 1981)). In other words, this Court reviews a decision of the Bankruptcy Court just the same as the Third Circuit usually reviews judgments of this Court. Should there be an appeal of this decision to the Third Circuit, the standard by which this Court reviews the Bankruptcy Court will be the same standard the Court of Appeals will use.

## III. DISCUSSION

The Trustee challenges the Bankruptcy Court's final judgment in favor of Bear on two grounds. First, the Trustee argues, "The Bankruptcy Court erred in finding that Bear acted reasonably because the auction it used to value the SAI—held in a market that was not functioning properly—failed to produce an actual sale[,] and its valuation lacked an explicable, rational basis." (D.I. 29 at 6) (heading capitalization removed). Second, the Trustee argues, "[T]he Bankruptcy Court erred by refusing the consider the limitations and valuation parameters specifically applicable to credit enhancements." (D.I. 29 at 18; D.I. 38) (heading capitalization removed).

5

## A. Rationality and Good Faith

The Trustee argues that the Bankruptcy Court's finding that "auction of repurchase agreement collateral in August 2007 was rational, in good faith and in compliance with the [GMRA]" constitutes error. (D.I. 29 at 6 (citing D.I. 30-2 at A471)). The Trustee also argues that the Bankruptcy Court's finding that the market for HomeBanc securities was not "dysfunctional" because it was "open for business" constitutes error. (D.I. 29 at 5 (citing D.I. 30-1 at A490-91)).

The Trustee argues that the "trial court's findings on the ultimate questions of reasonableness, rationality and good faith" are "conclusion[s] of law or at least . . . determination[s] of . . . mixed question[s] of law and fact." (D.I. 34 at 1 (citing *In re 15375 Mem'l Corp. v. Bepco, L.P.*, 589 F.3d 605, 616 (3d Cir. 2009)). Therefore, argues the Trustee, the Bankruptcy Court's findings of rationality and good faith are "subject to plenary review" as "essentially, . . . conclusion[s] of law." (*Id.*).

Bear, on the other hand, argues that the "issue presents a purely factual question subject to a deferential 'clear error' standard." (D.I. 31 at 1 (citing *DiFederico v. Rolm Co.*, 201 F.3d 200, 208 (3d Cir. 2000); *In re Polaroid Corp.*, 2004 WL 2223301, at *2 (D. Del. Sept. 30, 2004) (holding that the bankruptcy court's finding that asset sale conducted in good faith, by "rigorous auction process," was subject to clear error review))).

I agree with Bear, as to the applicable standard. The Bankruptcy Court saw and heard the witnesses testify, and concluded that Bear acted rationally and in good faith. As such, "good faith" is a historical fact. The Bankruptcy Court's factual determination of rationality and good faith is subject to clear error review.[3]

---

[3] Bear argues, "[T]he Trustee tacitly acknowledges that the Bankruptcy Court's determinations of the facts surrounding the auction and the lack of market dysfunction, as well as the finding that the auction was in good faith,

6

The Trustee presents no evidence that that Bankruptcy Court committed clear error in deciding that the market was functioning, or that Bear acted rationally and in good faith when it conducted the auction. (*See* D.I. 29 at 6-18; D.I. 34 at 1-8). Furthermore, the Trustee agrees that the Bankruptcy Court did not make a clear error in deciding historical facts. (Tr. 15:17-16:4). Accordingly, I will affirm the Bankruptcy Court's findings of rationality and good faith.

### B. Applicability of § 562

At summary judgment, the Bankruptcy Court accepted Bear's "bucket theory," and found that the SAI were traditional repos in accordance with subsection (i) of the Bankruptcy Code definition of "repurchase agreement." (D.I. 30-1 at A333). As a result, the Bankruptcy Court found that Bear was entitled to safe harbor protection under § 559. (*Id.*). In an alternative holding, the Bankruptcy Court found, "[T]he [SAI], even if not outright repos, clearly are credit enhancements . . . and are entitled to the benefits provided to repos in the safe harbor of Bankruptcy Code § 559." (*Id.* at A334).

However, the Trustee argues, "[T]he Bankruptcy Court omitted and ignored the limiting language in the catchall definition" in making its alternative holding about "credit enhancements." (D.I. 38 at 2) (emphasis omitted). The catchall definition provides that safe harbor protection for credit enhancements is "not to exceed the damages in connection with any such agreement or transaction, measured in accordance with section 562 of this title." 11 U.S.C. § 101(47)(v).

During the previous appeal, I held that the SAI qualified as "repurchase agreements" as "credit enhancements" under the catchall definition in § 101(47)(A)(v), rather than as

---

rational, and in compliance with the GMRA, are subject to clear error review." (D.I. 31 at 1 n.2 (citing D.I. 29 at 7-9)). I agree with Bear's observation. The Trustee seems to frame his arguments about the Bankruptcy Court's decision with the clear error standard in mind.

7

"traditional repos" under section § 101(47)(A)(i). (D.I. 30-1 at A373). Then, on remand, the Trustee asked the Bankruptcy Court to "address the implications of" this Court's finding that the SAI qualified as "repurchase agreements" under subsection (v), rather than subsection (i). (D.I. 38 at 3 (citing Bkr. No. 07-51740, D.I. 324 at 5-7)).[4] The Bankruptcy Court "declined the Trustee's invitation to consider a broader set of issues than what the District Court has specifically identified for [the Bankruptcy] Court to address on remand." (D.I. 30-1 at A445). In doing so, the Bankruptcy Court maintained that Bear was entitled to safe harbor protection under § 559, and that Bear's safe harbor protection was not limited by "damages in connection with any such agreement or transaction, measured in accordance with section 562 of this title." 11 U.S.C. § 101(47)(v).

The Trustee argues that the Bankruptcy Court erred in failing to consider whether my holding that the SAI were "credit enhancements" means that § 562 limits Bear's safe harbor protection. The Trustee argues that "no court has ever ruled on the [] issue." (D.I. 38 at 4; D.I. 29 at 18-20). Thus, argues the Trustee, this Court must now make that ruling. (D.I. 29 at 20). As an alleged legal error, I review *de novo* the Bankruptcy Court's determination that Bear was entitled to safe harbor protection under § 559, absent any limitation by § 562.

The Trustee argues that § 562 limits Bear's safe harbor protection in two ways that § 559 does not. First, the Trustee argues that § 562 limits Bear's safe harbor protection to $8.1 million dollars. (D.I. 38 at 4). Second, the Trustee argues that § 562 required the Bankruptcy Court to determine whether Bear had employed "commercially reasonable determinants of value," rather than just whether Bear "acted rationally, reasonably, and in good faith." (*Id.* at 4-5).

---

[4] In doing so, the Trustee preserved this issue for appeal. *See, e.g., McDonough v. Horizon Blue Cross Blue Shield of N.J.*, 641 F. App'x 146, 149 (3d Cir. 2015) ("a reasonably detailed exposition of an argument in the district court is required to preserve the issue for appeal").

8

As to the Trustee's first argument, the extent to which credit enhancements qualify as repurchase agreements entitled to safe-harbor protection is "not to exceed the damages . . . measured in accordance with section 562." 11 U.S.C. § 101(47)(v). The Trustee argues, "Bear's 'damages' with respect to the SAI were limited to the $8.1 million balance of the repo debt (the amount remaining after HomeBanc was credited for the value of the 27 traditional repos retained by Bear) . . . ." (D.I. 29 at 19). As a result, argues the Trustee, "Bear's safe harbor protection could not extend beyond the $8.1 million necessary to satisfy HomeBanc's remaining debt." (*Id.*). With the safe harbor protection so limited, the Trustee argues he "is entitled to judgment in his favor in the amount of $81,115,659.61, plus prejudgment interest."[5] (*Id.* at 20).

Bear, however, notes that § 562 is titled, "Timing of damage measurement in connection with swap agreements, securities contracts, forward contracts, commodity contracts, repurchase agreements, and master netting agreements." (D.I. 39 at 3). "As that title suggests," argues Bear, "the section addresses exactly one topic that conceivably could be relevant here: the dates on which [Bear], as non-defaulting party, had it been seeking damages from HomeBanc, could have measured its damages in a claim against HomeBanc, the defaulting party." (*Id.* (citing *In re Am. Home Mortg. Holdings, Inc.*, 637 F.3d 246, 255-56 (3d Cir. 2011) ("*Calyon*"))). As the Third Circuit explained in *Calyon*,

> Sections 559 and 562 address different situations. Section 559 applies only in the event that a repurchase agreement is liquidated, and the liquidation results in excess proceeds . . . . On the other hand, § 562 which covers, inter alia, repurchase agreements, applies when the contract is liquidated, terminated, or accelerated, and results in *damages* rather than excess proceeds.

637 F.3d at 255-56 (emphasis in original). As Bear articulates, "Section 562 applies only in the event that a repo default results in a claim for deficiency damages." (D.I. 39 at 4) (emphasis

---

[5] This number is the SAI's post-auction cash flow, less $8.1 million (the amount the Trustee concedes is protected by the safe harbor). (D.I. 34 at 20 n.31).

9

omitted). Bear did not seek damages arising from HomeBanc's default. Rather, Bear's liquidation of the HomeBanc securities, including the SAI, through an auction, resulted in excess proceeds. (D.I. 30-1 at A529, A92-106; D.I. 39 at 4). The $8.1 million sum highlighted by the Trustee is, by the Trustee's own admission, the "balance of the repo debt." (D.I. 29 at 19). "Debt" is not equivalent to "damages," *Calyon*, 637 F.3d at 255-56, and the Trustee offers no support for the proposition that it is.

Therefore, as Bear argues, "because there are no damages to be 'measured' in accordance with Section 562 . . . , Section 562 cannot apply." (D.I. 39 at 4). Thus, I agree with the Bankruptcy Court's holding, at summary judgment, that § 562 does not apply because Bear did not seek damages. (D.I. 30-1 at A350-51).

As to the Trustee's second argument, I hold that there are no damages to be "measured" in accordance with § 562. Given my holding, I need not assess the parties' arguments about whether Bear's conduct would also satisfy § 562's "commercially reasonable" standard. (D.I. 38 at 4-7; D.I. 39 at 4-7).

## IV. CONCLUSION

For the reasons set forth herein, the Bankruptcy Court's final judgment is **AFFIRMED**. An appropriate order will be entered.

10